(No. 5661

DENNIS COOK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 22, 1973.*

SMITH & GOMIEN, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

Claimant seeks damages for a personal injury to his left hand allegedly caused by negligence of the respondent.

Claimant's left hand was burned in a steam clothes presser in the laundry room of the Illinois State Penitentiary at Pontiac, on July 3, 1968. He was then an inmate at the prison.

Claimant contends that, while he was pressing a shirt on the steam presser, as he said he was authorized to do, the

machine malfunctioned and the upper half of the press came down on his hand. He contends that the circumstantial evidence establishes respondent's negligence under the doctrine of res ipsa loquitur. Claimant also charges respondent with negligence in permitting the claimant to be around a dangerous machine without proper supervision and training.

Respondent contends that the presser functioned properly at all times; that claimant was not authorized to operate the machine; and that his injury was caused, or contributed to, by claimant's own negligence when he put his hand into a press which was being operated by another inmate.

The parties agree that claimant was authorized to be in the laundry at the time of the accident. He was there on an authorized errand, apparently to pick up clothes which he had delivered to the laundry early that same morning. After delivering clothes to the laundry, claimant went to school. He was attending classes at the prison to become a draftsman. (Incidentally, we were pleased to note claimant's statement at the hearing 2 years later, "I am now employed by the State of Illinois as a draftsman.")

After conceding that claimant's presence in the laundry was authorized, the record shows that most of the relevant facts are in dispute. There were several people in the laundry at the time of the accident, but no known available eyewitness.

The claimant and the respondent each presented one witness at the hearing. Claimant testified on his own behalf; and William Dick Billerbeck, the officer in charge of the laundry at Pontiac Penitentiary, testified on behalf of the State. These two witnesses contradicted each other on almost every point essential to claimant's case.

Claimant testified that, after school, he went to his cell to put his drawing equipment away and then went back to

the laundry to pick up the clothes. He arrived at the laundry about 1:30 p.m.; was proceeding to gather up the clothes when Officer Billerbeck told him to help finish some laundry that was there. Claimant said he went to work on a mangler, finished the work on that machine in about 10 minutes and then went over to the steam press where there was still a pile of clothes.

Claimant described the steam presser as a large ironing board shape affair with a cushioned platform on which you lay the clothes. The top half, where the steam circulates, comes down on an air cylinder. Claimant had never operated a steam press, never been given any instructions on how to operate it, but knew that you had to push 2 buttons to close the machine. Claimant said the 2 buttons, a distance apart, were a "safety feature" because you had to use both hands to press the buttons and thus your hands had to be away from the press when it came down.

The steam presser was apparently being operated by another inmate, Richardson, when claimant arrived at this machine. Claimant said he stood at the pointed end of the machine and Richardson was standing at the other end. Richardson laid a pair of pants on his end of the cushioned board, while claimant was laying on a shirt at the other end. Both of claimant's hands were in the machine. Claimant could see Richardson but could not see what position his hands were in. Claimant never touched the buttons to bring down the press. Claimant said that Richardson was looking the other way when the press came down on his hand. Claimant said, "I got one hand out and the other partially out. Richardson immediately got the press up. I don't know how he did it, but he got it up. I backed away, held my hand up and they took me to the hospital."

Respondent's witness, Officer Billerbeck, gave a somewhat different version of the incident in his testimony. Of-

ficer Billerbeck had been in charge of the prison laundry for 7 years prior to this accident.

"In my capacity as laundry manager I did not at any time engage inmates not assigned to the laundry to assist in the laundry or to assist my inmates. It was never done,"

Officer Billerbeck said. We continue with direct quotations from Officer Billerbeck's testimony as follows:

"Claimant was not assigned to the laundry. He was a runner for the vocational training classes."

On the day in question,

"Claimant did not pick up anything from the laundry or deliver anything to the laundry. He came in for his shirt. He had permission to have his shirt and overalls pressed and he had come over to pick them up. He came in and spoke to me and he wanted to know whether his shirt was ready. I said that it was down being pressed, and he walked over to the press. Inmate Richardson was operating the press.

"I saw inmate Cook walk over to the presser. That was twenty feet from the area where he was supposed to pick up the laundry. I didn't tell him that he shouldn't be around the machines. I did advise him that the machines were dangerous. But I did not at any time order him not to go over to the machines.

"Cook's shirt was being pressed at the time. Cook was standing there waiting for Richardson to finish his shirt. I heard Richardson scream out Cook was burnt, and by that time Richardson released the press. I covered Cook's hand and sent him to the hospital. He was in such pain I couldn't ask him what happened. I sent him directly to the hospital with Officer Sunnen.

"It was not unusual there would be a special order to press one inmate's shirt and trousers specially. We did that regularly. It did not interrupt or interfere with our schedule. The inmates running the machines were authorized to be in the laundry. The runners were authorized to come in and pick up the clothes. Any outside unauthorized inmate is not supposed to be near any of these machines.

"There would be no way for these machines to malfunction. The only way these machines can function is when the compressor is running, there is a certain amount of air in there for them to work, and they just can't drop by themselves, the buttons have to be pressed. From where Richardson was standing he could have reached both control buttons.

"It would be impossible for these pressers to malfunction."

To sustain his action for damages the burden of proof is on the claimant. He must prove by a preponderance of

the evidence that respondent's negligence was the cause of his injury and that he was free from contributory negligence. *Moe* vs. *State, 23 C.C.R. 14.*

We have here only the testimony of two witnesses, which we believe to be of equal credibility, and whose statements on several material issues are in flat contradiction. In such circumstances, we are bound to the following rule which is well established in Illinois case law and cited in *Bradley* vs. *State, 22 C.C.R. 41:*

"An affirmative statement by one witness, met by a flat categorical denial by another, of equal credibility, does not meet the elementary requirement of the law that a plaintiff must make out his or her case by a preponderance of the evidence."

Applying the above rule to the record before us, there remains unchallenged sufficient evidence to find that both the claimant and the respondent were negligent. This, of course, would require a denial of the claim on claimant's failure to prove that he was free from contributory negligence.

Respondent's negligence is based on Officer Billerbeck's admission that he saw the claimant walk over to the steam presser and, although he warned him that the machines were dangerous, he did not order claimant not to go over to the machines. We find this failure to enforce the penitentiary safety rules to be an act of negligent supervision.

On the other hand, the claimant has not proved by a preponderance of the evidence that he was in the exercise of due care and caution for his own safety. The evidence does not support claimant's contention that the presser malfunctioned and fell without being released by someone pushing the buttons.

Claimant urges us to conclude, under the doctrine of *res ipsa loquitur*, that the presser must have malfunctioned, citing the authority of *Cobb* vs. *Marshall Field & Co.,*

*(1959) 22 Ill.App.2d, 143.* The facts here are clearly distinguishable from the *Cobb* case and the analogy is very remote. In *Cobb*, a passenger elevator fell to the basement, an obvious malfunction. The inference of negligence under *res ipsa loquitur* is especially strong in passenger-common carrier cases. Injured passengers in a case like *Cobb* are generally free from contributory negligence. Also, in such cases, the defective elevator or carrier is never used after the accident until it is repaired. In the case at bar, the steam presser was not even inspected after claimant's injury but continued in daily use and service for another year after this accident. Officer Billerbeck's unrefuted statement that it would be "impossible" for this presser to malfunction, as suggested by the claimant, further supports our conclusion on this point.

The presser had to be activated by an operator (Richardson) pressing the two buttons, or it would never have come down on claimant's hand. Now visualize what the operator, Richardson, must have done to press both buttons. Richardson had to lift both of his arms wide apart, if standing in his normal position in front of the machine, and stretch quite a distance if he were standing to one side as claimant said. Either way, if claimant had been exercising reasonable care for his own safety, he would have seen Richardson's movements and either removed his hands or called out for Richardson to stop.

Fortunately, claimant's painful burn left him with only a scar on his injured left hand, and he now enjoys full use of the hand. Having found that claimant did not prove he was free from contributory negligence, this claim must be denied.

This claim is denied.